IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| ALESSANDRA NICOLE ROGERS,<br><br>Plaintiff,<br><br>vs.<br><br>STANTON RIGGS, CLAY CORN, DINA HOLCOMB, DANIEL ORNELAS, SUSAN GOLDSTROM, in their official and individual capacities, and CHAVES COUNTY,<br><br>Defendants. | Case No. 2:21-CV-00445-SWS/KHR |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on the *Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity* (ECF No. 85). The Court, having considered the briefs and materials submitted in support of the motion and the Plaintiff's response and sur-reply in opposition thereto (ECF Nos. 98, 126), and being otherwise fully advised, FINDS and ORDERS as follows:

### BACKGROUND

Plaintiff brought six claims against various Defendants related to her employment with Chaves County, New Mexico. Plaintiff initially started working with the Chaves County Detention Center ("CCDC") in 2009. She left employment with CCDC shortly thereafter, allegedly because of unwelcome advances and comments by her supervisor.

Plaintiff returned to CCDC in 2011 and began supervising the Classifications Department in 2012. At all times material to her complaint, she held the rank of Lieutenant – the third highest person in command at the detention center. (Defs.' Ex. A, Rogers Dep. 34: 13-15.)

Plaintiff alleges Defendant Clay Corn, a CCDC Administrator, engaged in a years-long extra-marital affair with a subordinate Chaves County employee, which ended in or around 2016 or 2017. Thereafter, rumors began circulating that Defendant Corn was engaged in a relationship with another CCDC employee, Elvira Lupien. In the ensuing years, Plaintiff allegedly complained several times to Defendants Corn, Goldstrum (Human Resources Director), and/or Riggs (Chaves County Manager/Attorney) about the affair between Corn and Lupien which she believed resulted in favoritism to Lupien and her family members.

On or around June 10, 2020, Plaintiff drafted a petition listing various issues of concern to CCDC employees. (Defs.' Ex. L, ECF No. 85-11.) The petition is purportedly signed by forty-five current and former CCDC employees, including Plaintiff, and was submitted to the County Commissioners. In her deposition, Plaintiff testified that although she drafted the petition, she did not know how the signatures were obtained or who submitted the petition to the County. (Rogers Dep. 201:15-203:8.) Though nothing on the petition itself indicates who drafted it, Defendant Corn apparently attributed its creation and circulation to Plaintiff and her co-workers in the Classifications Department (Sgt. Morales and Officer Lopez). (Pl.'s Ex. 1, ECF No. 98-1.)

On July 17, 2020, the Chaves County Sheriff's Office conducted a search of the CCDC. (Defs.' Ex. B, ECF No. 85-2.) During the search, a duffle bag containing

contraband was found underneath Plaintiff's office desk. (*Id.* at 2.) This contraband included weapons, syringes, and possible drugs. (*Id.*) Plaintiff told the investigating officer she had been authorized to use the contraband items in training sessions for detention officers. (*Id.* at 3.) That same day, Plaintiff Rogers, Pedro Morales and Cristian Lopez were placed on administrative leave pending further investigation. (Pl.'s Ex. 25, ECF No. 98-22.) On August 10, 2020, Plaintiff was given two written reprimands, one for the contraband found in her office in violation of County policy and one for the improper handling of security keys. (Pl.'s Exs. 32 & 33.)

Apparently by early fall of 2020, Defendant Corn gave notice of his intention to retire effective December 1, 2020. (Defs.' Ex. I (undated notice of intent to retire), ECF No. 85-8.) On October 6, 2020, Plaintiff expressed her interest in becoming the next CCDC Administrator. (Defs.' Ex. J, ECF No. 85-9.) However, it appears that by September 25, 2020, a determination had been made to select Defendant Daniel Ornelas for that position. (*See* Pl.'s Ex. 3 (Goldstrom email dated 9/25/2020), ECF No. 98-3.) Plaintiff was not selected for the administrator position, purportedly because of the results of the Sheriff's Office investigation on July 17, 2020. (Defs.' Ex. M, Riggs Decl. ¶ 13.) Plaintiff was also not selected to serve as interim Chief of Security at CCDC, again purportedly because of her possession of contraband in July of 2020. (*Id.* ¶ 14.)

On December 4, 2020, Plaintiff was placed on administrative leave with pay and provided notice of a pre-disciplinary hearing related to the results of the Sheriff's Office search on July 17, 2020. (Defs.' Ex. F, ECF No. 85-5.) The hearing was conducted on December 17, 2020, during which Plaintiff admitted the duffel bag was hers and that it

contained drugs and other contraband. (Defs.' Ex. G, ECF No. 85-6.) However, Plaintiff claimed she had been authorized to keep the items for training purposes. (*Id.*) Ultimately, Defendant Riggs, the hearing officer, concluded Plaintiff had violated County policy and imposed a five-day suspension without pay. (*Id.*) Plaintiff appealed her suspension to an independent hearing officer who conducted an administrative hearing on March 4, 2021. (*See* ECF Nos. 46 & 46-1.) At the conclusion of the hearing, the Hearing Officer affirmed Plaintiff's five-day suspension. (*Id.*) Plaintiff resigned from her employment with CCDC effective August 25, 2021. (Defs.' Ex. H, ECF No. 85-7.)

Plaintiff filed her complaint on April 18, 2021, in the Fifth Judicial District Court for the County of Chaves, New Mexico. Defendants removed the action to this Court on May 11, 2021. Plaintiff's complaint asserts the following claims:

> **Count I: § 1983 Due Process Violation** *(against Defendants Riggs and Holcomb in their individual capacities)*;
>
> **Count II: § 1983 Violation of First Amendment** *(against Defendants Riggs, Corn and Ornelas in their individual capacities)*;
>
> **Count III: Violation of the New Mexico Whistleblower Protection Act** *(against Defendant Chaves County)*;
>
> **Count IV: Violation of the New Mexico Human Rights Act (NMHRA) (Gender Discrimination)** *(against Defendants Chaves County, Riggs, Corn, Ornelas and Goldstrom)*;
>
> **Count V: Violation of the NMHRA (Sexual Harassment/Hostile Work Environment)** *(against Defendants Chaves County, Riggs, Corn, Ornelas and Goldstrom)*;
>
> **Count VI: Violation of the NMHRA (Retaliation)** *(against Defendants Chaves County, Riggs, Corn, Ornelas and Goldstrom)*; and
>
> **Count VII: Petition for Certiorari**.

On May 13, 2021, Defendants moved to dismiss Count I, Count II as against Ornelas and Corn, and Counts IV, V & VI against Defendant Ornelas, for failure to state a claim on which relief can be granted. (ECF No. 4.) This Court granted in part and denied in part Defendants' motion, dismissing Count I of Plaintiff's complaint. (*See Order on Partial Motion to Dismiss*, ECF No. 18.) Accordingly, the only remaining federal claim is for the alleged violation of Plaintiff's First Amendment rights.

## UNDISPUTED MATERIAL FACTS

The following are the undisputed facts which are material to the Court's disposition of Defendants' motion:[1]

1. On or about June 10, 2020, Plaintiff drafted and signed a petition listing numerous "issues" purportedly of concern to the CCDC employees and former employees who signed on to the petition. (Defs.' Ex. L.) Specifically, the petition stated:

> I am or have been employed at CCDC.
> I have witnessed wrong-doing, harassment, bullying and favoritism by supervisors and administration.
> I am fearful to report what I have witnessed due to retaliation from administration and/or their family.
> I believe what is happening to Sgt. Morales is an act of retaliation.

---

[1] In her response brief, Plaintiff suggests she needs additional discovery to adequately respond to Defendants' summary judgment motion. (Pl.'s Resp. Br. at 14-15.) In support, Plaintiff cites Fed. R. Civ. P. 56(d) and states in her Declaration that she has "not yet had the opportunity to depose any of the individual defendants in [her] case." (Rogers Decl. ¶ 5.) Plaintiff further points out that, at least at the time her brief was filed, there were several discovery motions pending. (Pl.'s Resp. Br. at 15.) However, Plaintiff's declaration falls far short of the required showing that she "cannot present facts essential to justify [her] opposition." FED. R. CIV. P. 56(d). "In the Tenth Circuit, a non-movant requesting additional discovery under Rule 56(d) must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment. . . . Thus, it is insufficient for the party opposing the motion to merely assert that additional discovery is required to demonstrate a factual dispute or that evidence supporting a party's allegation is in the opposing party's hands." *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (internal quotations and citations omitted). None of this specificity is contained in Plaintiff's Declaration. Regardless, the facts material to the Court's disposition herein are undisputed and already contained in the record before the Court.

> I come to work angry or stressed because of how things are ran.
> I believe I have been retaliated against in some way.
> I don't believe administration has our best interests at heart.
> I feel I have not received proper training.
>
> By signing this I have acknowledged that I have been affected by at least one of these issues and expect protection from retaliation.

2. The petition was circulated, signed by forty-five people, and submitted to the County. Defendant Corn attributed the creation and circulation of the petition to the Classifications Department, which included Plaintiff, and communicated as much to Defendants Riggs and Goldstrom in an email on Monday, June 15, 2020: "I received information that Lt. Rogers, Sgt. Morales, and Ofc. Lopez (Classification Dept.) are attempting to get current and former CCDC officers to sign a petition. Something along the lines of CCDC Administration 'Not running the jail right.'" (Pl.'s Ex. 1.) Regarding Plaintiff specifically, Defendant Corn "request[ed] [she] be transferred to another department within Chaves County at the same wage," asserting she had "become detrimental and counter-productive to CCDC administration and operations" and if she "disagrees with an administrative decision" she'll suggest to staff that they skirt the chain of command, "start a petition," or not follow directives. (*Id.*)

3. That same day Defendant Goldstrom acknowledged having seen the petition and planned to meet and discuss the matter with Corn and Riggs on Wednesday morning of that week. (*See* Pl.'s Ex. 12.) In an email to the Chaves County Safety & Compliance Manager on June 18, 2020, Defendant Goldstrom expressed approval in "getting rid of" Plaintiff. (Pl.'s Ex. 14.)

4. On June 30, 2020, Defendant Corn sent Goldstrom an email advising that an external hard drive issued to Plaintiff in December of 2018 was now missing. (Pl.'s Ex. 16.) Corn indicated Plaintiff would be receiving a written reprimand for "this security breach" and asked whether he should also contact the Sheriff's Office to make a report. (*Id.*) Goldstrom responded that an internal investigation should be done and the matter should be treated as any other missing County property. (*Id.*)

5. On July 8, 2020, a report was made to the Sheriff's Office about missing County property – the external hard drive issued to Plaintiff. (Pl.'s Ex. 20.) The reporting officer advised that an internal investigation should be done and closed the case. (*Id.*)

6. At 6:26 a.m. on Friday, July 17, 2020, Defendant Corn sent an email to Defendant Goldstrom containing the following message: "I haven't heard anything regarding CCSO investigating the missing hard drive. Just an FYI, Lt. Rogers leaves on Tuesday for about a 2 and a half week vacation." (Pl.'s Ex. 24.) Goldstrom responded at 8:19 a.m.: "Okay. I will find out." (*Id.*)

7. At around 8:30 a.m. that same day, Sheriff Herington held a briefing for multiple deputies to advise they would be searching CCDC "for contraband, to include illegal drugs, drug paraphernalia, and any other policy listed contraband." (Defs.' Ex. B. at 2.) The deputies arrived at CCDC at approximately 9:00 a.m. and conducted the search, locating the duffel bag containing drugs and weapons underneath the desk in Plaintiff's office. (*Id.*)

8. Plaintiff Rogers, Pedro Morales, and Cristian Lopez were placed on administrative leave later that day. (Pl.'s Ex. 25.) Plaintiff ultimately received a five-day

suspension for possession of the drugs and other contraband found on July 17, 2020. (Defs.' Ex. G.)

9.     Plaintiff was not selected for the position of Detention Administrator in the fall of 2020, nor was she promoted to the position of interim Chief of Security which was apparently also filled sometime during the fall of 2020.

### STANDARD OF REVIEW

Summary judgment is appropriate where a movant shows "there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (2010) (emphasis added). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal quotations and citations omitted). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

In reviewing a motion for summary judgment, the Court is to determine whether there is evidence to support a party's factual claim, *Jarvis v. Potter*, 500 F.3d 1113, 1120 (10th Cir. 2007), and, in doing so, must view the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party, *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011). "However, unsupported conclusory allegations do not create a genuine issue of fact[,]" *id.* (internal quotations and citations omitted), and

"mere speculation unsupported by evidence is insufficient to resist summary judgment[,]" *Martinez v. CO2 Serv., Inc.*, 12 F. App'x 689, 695 (10th Cir. 2001) (citations omitted).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001), and "public officials who act in good faith, on the basis of objectively reasonable understandings of the law at the time of their actions," *Weigel v. Broad*, 544 F.3d 1143, 1151 (10th Cir. 2008). "When a defendant asserts qualified immunity at the summary judgment stage, it is the plaintiff's burden to prove (1) the defendant violated his constitutional rights; and (2) the law was clearly established at the time of the alleged violation." *Soza v. Demsich*, 13 F.4th 1094, 1099 (10th Cir. 2021). "This Court has discretion to decide the order in which these two prongs should be addressed, and, when appropriate, does not need to address both. Only when a plaintiff satisfies this heavy burden must the defendant then satisfy the traditional summary judgment standard." *Id.* (citations omitted).

## DISCUSSION

### A.    First Amendment Claim (Count II)

Plaintiff alleges she was subjected to retaliation after creating the petition in June 2020 highlighting what she characterizes as "a number of serious issues, violations of law and public concerns that were affecting morale, safety and security at CCDC." (Compl. ¶ 164.) The acts of alleged retaliation include the investigations into her possession of contraband, eventually resulting in a five-day suspension, and Defendant Corn's promotion of Lt. Hernandez to "interim" Chief of Security without posting the position along with

Defendant Ornelas' alleged statement he would only promote Hernandez to Chief of Security because he was the only Lieutenant who hadn't signed her petition. (*See* Compl. ¶¶ 165-173.)

> Because "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions," *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), not every restriction on a public employee's speech amounts to a deprivation of First Amendment rights. "[T]he First Amendment protection of a public employee's speech depends on a careful balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Lane* [*v. Franks*, 134 S.Ct. 2369, 2374 (2014)] (brackets and internal quotation marks omitted).
>
> We apply what we have termed the *Garcetti/Pickering* test, *see Garcetti*, 547 U.S. 410, 126 S.Ct. 1951; *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), to First Amendment retaliation claims by government employees. The test has five elements:
>
>> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.
>
> *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir.2014) (internal quotation marks omitted).

*Seifert v. Unified Gov't of Wyandotte Cty./Kansas City*, 779 F.3d 1141, 1151 (10th Cir. 2015). "The first three elements are typically questions of law (though they can turn on disputed issues of fact), while the last two are typically questions of fact." *Id.*

In their motion, Defendants challenge the fourth and fifth elements, arguing Plaintiff cannot show the petition was a motivating factor in either her suspension or the decisions

to not select her for promotion. Instead, Defendants insist these decisions were made based on the contraband found under her desk in violation of County policy. Plaintiff argues there is evidence "linking" her "protected activity" with Defendants' pursuit of investigations related to the missing hard drive and contraband found under her desk. (Pl.'s Resp. Br. at 17.) To be sure, the close temporal proximity between Plaintiff's creation of the petition and Defendants' initiation of the investigations and search of CCDC may be sufficient to create a genuine dispute of fact regarding motive. *See Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005) ("Adverse action in close proximity to protected speech may warrant an inference of retaliatory motive."). However, the Court sees a more fundamental obstacle to the success of Plaintiff's claim: whether the "speech" was on a matter of "public concern." Because there is no dispute as to the contents of the "speech" at issue – the June 2020 petition – this is purely a question of law for this Court.

> Matters of public concern are "those of interest to the community, whether for social, political, or other reasons." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000). In determining whether speech pertains to a matter of public concern, the court may consider "the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Id.* Statements revealing official impropriety usually involve matters of public concern. *Id.* Conversely, speech that simply airs "grievances of a purely personal nature" typically does not involve matters of public concern. *Id.* at 1225. In deciding what is a matter of public concern, we are required to consider "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007). The Tenth Circuit has held the following are *not* matters of public concern: "speech regarding grievances about internal departmental affairs, *Hom v. Squire*, 81 F.3d 969, 974

(10th Cir.1996), disputes over the term of employment, *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1233–34 (10th Cir.1998), and workplace frustration, *McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir.1989)." *Brammer-Hoelter*, 492 F.3d at 1205.

Though Defendants do not contest the "public concern" element in their motion, Plaintiff addresses this element in her brief,[2] contending in largely conclusory fashion the petition involves matters of public concern "such as widespread harassment, wrongdoing, nepotism, and retaliation by the administration." (Pl.'s Resp. Br. at 17.) Plaintiff further contends the petition raises "the issue of improper or non-existent training of jail staff, by the administration, which is also a matter of public concern as it involves the health and safety of staff, inmates, and the general public." (*Id.* at 17-18.)

The petition's claims of "harassment," "wrongdoing," and "retaliation . . in some way" are too broad and generic to fall in the category of official impropriety or misconduct of interest to the community; rather, considering the form and context of the petition, Plaintiff's "speech" simply airs "purely personal grievances affecting her own conditions of employment." *See Huff v. Colo. Dep't of Corr.*, No. 11-cv-00149-CMA-MJW, 2012 WL 3135715, at *5 (D. Col. July 31, 2012) (unpublished) (finding correctional officer's complaints of harassment and gender discrimination in the workplace related to purely personal grievances affecting her own conditions of employment and were not on a matter

---

[2] "A district court may grant summary judgment on a ground not formally raised in a summary judgment motion, so long as the losing party was on notice that she had to come forward with all of her evidence. If a losing party was not prejudiced by the lack of notice, we will not reverse simply because the grant of summary judgment came sua sponte. A party is procedurally prejudiced if it is surprised by the district court's action and that surprise results in the party's failure to present evidence in support of its position." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1170 (10th Cir. 2010) (internal quotations and citations omitted).

of public concern). While statements regarding a lack of training impacting the health and safety of inmates, staff, and the public might be considered matters of concern to the community, the actual statements in the petition are not so specific; instead, the petition simply complains that one or more of the signors "have not received proper training." Such a general statement "cannot be fairly characterized as constituting speech on a matter of public concern." *Connick*, 461 U.S. at 146. Likewise, expressing discontent with "how things are ran" does not involve a matter of public concern. *See Gardetto v. Mason*, 100 F.3d 803, 813 (10th Cir. 1996) (First Amendment does not protect a public employee's "criticisms of internal management decisions").

Considering the whole record, the petition's complaints of harassment and retaliation could relate to Plaintiff's accusations of sexual harassment and retaliation stemming from her grievances about the affair between Corn and Lupien. However, the Tenth Circuit has held that complaints of sexual harassment, retaliation, and discrimination are *not* matters of public concern, particularly where the complained-of conduct does not pertain to the governmental agency's discharge of its governmental responsibilities. *See Woodward v. City of Worland,* 977 F.2d 1392, 1403-04 (10th Cir. 1992) (holding sexual harassment complaints were not matters of public concern because "the thrust of the [p]laintiffs' speech was that they personally were being subjected to sexual harassment and they wanted it to stop . . . [and] [a]lthough there were several general references in their complaints to the possibility that other women may also have been subjected to sexual harassment, no specifics were given nor was the purpose or substance of the complaints to assert that the sexual harassment prevented the [agency] from properly discharging its

official responsibilities"); *David v. City and Cnty. of Denver*, 101 F.3d 1344, 1356 (10th Cir. 1996) (holding multiple complaints by plaintiff that she was "personally subjected to sexual harassment, retaliation, and unwarranted disciplinary action . . . focus on the conditions of her own employment . . . and do not involve matters of public concern"); *Kosan v. Utah Dep't of Corr.*, 290 F. App'x 145, 152 (10th Cir. 2008) (unpublished) (holding complaints of sexual harassment related to a "purely personal grievance affecting [plaintiff's] own conditions of employment" and were not matters of public concern).

The speech at issue here simply expresses grievances related to "internal personnel disputes and working conditions" which are ordinarily not viewed as addressing matters of public concern. *See David*, 101 F.3d at 1355; *see also Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988) (speech addressing "internal policies relevant only to department personnel [or] involv[ing] essentially a private matter" does not pertain to matters of public concern). A review of the entire record makes clear Plaintiff was intending to address personal grievances she had with the CCDC administration, particularly Corn. The petition does not pertain to concerns affecting CCDC's discharge of its official governmental responsibilities. *See Connick*, 461 U.S. at 148 (speech seeking to inform the public that an elected official was not discharging his governmental responsibilities addresses a matter of public concern; speech simply conveying the fact that an employee is upset with the status quo does not). Because Plaintiff's speech was not on a matter of public concern, "the

speech is unprotected and the inquiry ends." *Brammer-Hoelter*, 492 F.3d at 1203. Accordingly, Plaintiff's First Amendment retaliation claim fails as a matter of law.[3]

### B. State Law Claims

Plaintiff's remaining claims are brought pursuant to New Mexico state law. As no federal claims remain, and consistent with U.S. Supreme Court guidance, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020) ("The Supreme Court has encouraged the practice of dismissing state claims or remanding them to state court when the federal claims to which they are supplemental have dropped out before trial."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims"). Accordingly, Plaintiff's state law claims will be remanded to the Fifth Judicial District Court for the County of Chaves, New Mexico, allowing her to pursue those claims in the state forum in which they were initially filed.

### CONCLUSION

In support of her First Amendment claim, Plaintiff alleges she was subjected to retaliation motivated by her creation of a petition listing numerous complaints about conduct occurring at the detention center where she worked. (Compl. ¶¶ 163-165.)

---

[3] Because Plaintiff cannot show Defendants violated her First Amendment rights, Defendants are entitled to qualified immunity as to this claim.

Because Plaintiff's "speech" does not pertain to a matter of public concern, her First Amendment claim fails as a matter of law. And because no federal claims remain in this action, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. THEREFORE, it is hereby

**ORDERED** that the *Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity* (ECF No. 85) is GRANTED IN PART and DENIED IN PART; Defendants are entitled to summary judgment as a matter of law on Plaintiff's First Amendment claim (Count II).

**IT IS FURTHER ORDERED** that Plaintiff's state law claims (Counts III-VII) are REMANDED to the Fifth Judicial District Court for the County of Chaves, New Mexico.

Dated this 9th day of August, 2022.

Scott W. Skavdahl
United States District Judge